# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1433

_____

Kevin Ward,

*Plaintiff - Appellant*,

v.

Bradley Smith; Tiffany Breeden; Dustin Merriett,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: January 17, 2013
Filed: July 29, 2013
[Published]

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Inmate Kevin Ward brought this action pursuant to 42 U.S.C. § 1983 against two correctional officers and a nurse at South Central Correctional Center in Licking, Missouri. He alleges that the officers used excessive force against him, and that the nurse was deliberately indifferent to his medical needs, in violation of the Eighth Amendment. After a period of litigation, Ward filed a second motion for appointment

of counsel, which the district court[1] denied, and Ward appealed. According to circuit precedent, we have jurisdiction over this interlocutory appeal, and we affirm the denial of the motion.[2]

The underlying dispute arose out of events on October 26, 2009. Ward alleges that he was in his cell speaking with another inmate when Officer Merriett told him to stop talking. When Ward refused, Officer Merriett retrieved Officer Smith. The officers ordered Ward to permit them to handcuff him, and Ward refused to comply. Officer Smith then placed the nozzle of a pepper spray canister through the food port of Ward's cell and sprayed him. Ward claims that when he attempted to turn the nozzle toward the floor, the officers used a "battering ram" to prevent him from blocking the pepper spray and sprayed him again. The officers then placed Ward in a "strip out cage," where Ward refused the clean "smock" the officers provided. Ward once again refused to allow the officers to handcuff him, and he alleges that the officers sprayed him "directly in the face and mouth."

Once the officers had restrained Ward, a nursing professional named Tiffany Breeden examined him. Ward claims that Breeden disregarded his request that she "irrigate" his face and eyes, his assertion that he is asthmatic, and his complaints about injuries allegedly caused by the battering ram. He contends that Breeden told the officers that he would be able to "handle" more pepper spray, and that Officer Smith then sprayed his genitals and used a racial slur. Ward claims that the officers then placed him in a cell with no running water, towels, or clothes for four and a half days.

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2]This court appointed Patrick Kenney, Esq., to represent Ward on appeal and to address, among other things, the question of appellate jurisdiction. Mr. Kenney has ably discharged his duties, and the court thanks him for his diligent service.

After unsuccessfully pursuing administrative remedies, Ward filed this action. Near the outset of the proceedings, he moved for appointment of counsel pursuant to 28 U.S.C. § 1915(e). The district court denied the motion on the basis that "the record has not been developed sufficiently to determine if appointment of counsel is justified."

After discovery began, Ward filed a second motion for appointment of counsel. He contended, among other things, that video cameras captured the pepper-spray incident, that prison officials would not produce video tapes to an inmate proceeding *pro se*, and that prison guards had confiscated some of his legal documents. Breeden opposed Ward's motion, arguing that it was unnecessary for the court to appoint counsel because Ward had been able to file two complaints and several other documents, had not demonstrated that the case was either legally or factually complex, and had not attempted to retain counsel. Officers Smith and Merriett opposed Ward's motion on the grounds that no materials had been confiscated and that Ward had "demonstrated an ability to pursue his claims." The district court denied Ward's motion "for the reasons given in defendants' suggestions in opposition thereto." Ward now appeals, arguing that the district court abused its discretion by denying his motion on the merits and by failing adequately to explain its decision.

In civil cases, there is no constitutional or statutory right to appointed counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995). Rather, a court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). This court has delineated certain criteria for district courts to consider in deciding whether to recruit counsel, including the factual and legal complexity of the underlying issues, the existence of conflicting testimony, and the ability of the indigent plaintiff to investigate the facts and present his claims. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). We review the denial of a motion for appointment of counsel for an abuse of discretion, according the district court "a good deal of discretion to determine whether representation is warranted

given the nature of the case and the litigants." *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).

In most circuits, an order denying a motion for appointment of counsel in a § 1983 action is not immediately appealable, because there is no final decision of the district court. *See Marler v. Adonis Health Prods.*, 997 F.2d 1141, 1142 & nn.1 & 2 (5th Cir. 1993) (collecting cases). In *Nelson v. Shuffman*, 476 F.3d 635 (8th Cir. 2007) (per curiam), however, this court asserted jurisdiction in such a case. The *Nelson* majority opinion does not mention jurisdiction, and we might normally be at liberty to disregard a *sub silentio* assertion. *See Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974). But the jurisdictional issue in *Nelson* was fully aired in a dissent, 476 F.3d at 636-38 (Colloton, J., dissenting), and we feel constrained as a matter of circuit practice to follow *Nelson*. *See also Slaughter v. City of Maplewood*, 731 F.2d 587, 588-89 (8th Cir. 1984) (holding that an order denying appointment of counsel in a Title VII case was immediately appealable under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)). A majority of this panel would revisit *Nelson*, but only the court *en banc* may overrule panel precedents.

The district court did not abuse its considerable discretion in denying Ward's motion. Ward argues that the court should have appointed counsel in light of discovery disputes that have developed in the case. He complains that while the prison officials assert that there is no need for appointment of counsel, they also maintain that certain important materials cannot be produced in discovery to an inmate who proceeds without counsel. But if the district court perceives such gamesmanship, then it has authority to address it without appointing counsel. Insofar as the prison officials contend that Mo. Rev. Stat. § 217.075 or an internal policy forbids them to produce certain materials to inmates who proceed *pro se*, the district court has authority under the federal rules to order discovery for good cause. *See* Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *see also* Mo. Rev. Stat.

-4-

§ 217.075(2) ("The court of jurisdiction . . . may at [its] discretion permit the inspection of the department reports or parts of such reports by the offender, whenever the court . . . determines that such inspection is in the best interests or welfare of the offender."). So when Ward filed his motion for appointment of counsel, the district court was presented with a typical discovery dispute over evidence of an alleged excessive use of force by prison officials. As such, the court did not abuse its discretion in concluding that neither the underlying facts nor the legal arguments were so complex as to require appointment of counsel. Ward's well-written filings with the court "indicate his basic ability to state claims." *Edgington*, 52 F.3d at 780.

We are satisfied that the district court sufficiently explained its rationale for denying Ward's motion. Although the court's analysis was limited to a reference to "the reasons given in defendants' suggestions in opposition" to Ward's motion, the memoranda to which the court referred identified the correct legal standard and addressed the relevant factors. The opposition briefs cited "the factual and legal complexity of the case" as one of the factors that the district court must consider, referred to the prison's practice of not providing certain materials "to pro se inmates because providing such materials undermines the safety and security of the correctional center," noted that Ward could still "request an opportunity to view the videos in this case," and argued that "[t]hus far, Mr. Ward has demonstrated an ability to pursue his claims." Unlike *Walker v. Bowersox*, 526 F.3d 1186 (8th Cir. 2008), where "the district court did not explain why the relevant factors were not met," *id.* at 1190, the court here provided an explanation by incorporating the arguments advanced by the defendants. There was no abuse of discretion.

\*   \*   \*

The order of the district court is affirmed.

-5-

MURPHY, Circuit Judge, dissenting.

I respectfully dissent from the court's decision to affirm the district court's denial of Kevin Ward's motion to appoint counsel. Appellant moved for appointment of counsel in order to manage a discovery dispute that rapidly outgrew the abilities of an average imprisoned pro se litigant, but his request was denied. Two of the most important considerations for a court on such a motion are the factual and legal complexity of the case and "the ability of the indigent person to investigate the facts . . . [and] to present claims." Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 794 (8th Cir. 2006).[3]

The main issue in this case involves discovery disputes relating to video tapes that allegedly documented a prison assault on Ward. He asserts that while his initial grievances were denied because the video evidence purportedly did not support his allegations, prison officials have since vacillated as to whether the video actually existed and whether it in fact recorded all of the alleged assault. Ward contends that prison administrators have persistently refused to allow him access to the video and to other material evidence on the ground that he is a pro se litigant and that evidence was confiscated from him when he was housed in administrative segregation. Appellees dispute Ward's allegations about alteration of the video evidence and confiscation of his legal materials. They contend that for safety and security reasons much of the evidence not yet released to Ward cannot be provided to imprisoned inmates.

What might originally have been characterized simply as a dispute over production of a videotape has grown into a wider conflict concerning potential

---

[3] While there is no statutory or constitutional right to appointed counsel in civil cases, Edgington v. Mo. Dep't of Corr., 52 F.3d 777, 780 (8th Cir. 1995), we have instructed courts to "give 'serious consideration' to appointing counsel whenever an indigent plaintiff establishes . . . a prima facie case which, if proven, would entitle him to relief," Sours v. Norris, 782 F.2d 106, 107 (8th Cir. 1986) (citation omitted).

spoliation and Ward's need for adequate access to discovery balanced against the prison's asserted security interests in restricting what materials can be disclosed to an incarcerated litigant. There are also questions about what evidence actually was provided to Ward or confiscated from him. Such issues have grown complicated enough even to confuse the attorneys appearing before our court. At oral argument the Assistant Attorney General represented to the court that Ward had in fact viewed the disputed video. Counsel appointed for Ward at the time was able to correct that record, and the state later admitted error in a Rule 28(j) letter. While there is no reason to believe the misstatement at oral argument was anything other than an innocent mistake, it does underline the difficulty of the discovery dispute for even seasoned litigators, much less an incarcerated inmate with no legal experience.

The majority suggests that the district court can order discovery if it perceives any "gamesmanship" by prison officials. Ante at 4. There are two problems with this suggestion. First, it does not address current questions raised by Ward about spoliation and evidence alteration. Second, and more importantly, Ward has repeatedly emphasized that his appeal does not concern how the district court should rule on the underlying discovery dispute. Rather, it is about whether the nature of that dispute and the facts and law surrounding it are sufficiently complex to require appointment of counsel. The potential issues include which materials Ward should be provided and whether oversight is necessary to prevent any spoliation of evidence. Such issues can be complicated and touch on sensitive issues of prison policy and procedures.

On abuse of discretion review, we look to ensure that the district court gave due weight and consideration to all relevant and significant factors. Thatcher v. Hanover Ins. Grp., Inc., 569 F.3d 1212, 1213 (8th Cir. 2011). The difficulty Ward faces in order to secure all relevant evidence and determine whether it has been altered is "a relevant factor that should have been given significant weight" by the district court. Id.; see Walker v. Bowersox, 526 F.3d 1186, 1190 (8th Cir. 2008). Although the district court did not provide any independent rationale for its decision,

it cited the "defendants' suggestions in opposition" as grounds for its ruling. The defendants submitted two short memoranda opposing appointment of counsel. Neither response addresses the complexity of the dispute or Ward's ability to retain access to material evidence and ensure it has not been altered. See Defendants' Opposition to Plaintiff's Second Motion for Appointment of Counsel, Docket No. 36; Memorandum of Defendant Tiffany Breeden, In Opposition to Plaintiff's Motion To Appoint Counsel, Docket No. 34. This is not different in any meaningful respect from the situation in Bowersox where the district court also "did not explain why the relevant factors were not met" and we remanded for more thorough consideration of whether to appoint counsel. 526 F.3d at 1190.

The district court's decision denying appointment of counsel did not give significant weight to the relatively complicated nature of the ongoing discovery dispute in this case. Its order should therefore be reversed and remanded for further consideration of the motion to appoint counsel for Ward in this matter.

_____